# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| Charlene Bigelow, as mother and next best friend of Devin Lynch, | ) ) ) |
| Plaintiff, | ) ) No. 18 CV 02055 |
| vs. | ) ) ) |
| Thomas Dart, Sheriff of Cook County, Correctional Officer Darrell Maloy (Star 16247), and Cook County, Illinois, | ) ) ) ) |
| Defendants. | ) JURY DEMAND |

## DEFENDANT THOMAS DART, SHERIFF OF COOK COUNTY's, ANSWER TO PLAINTIFF'S COMPLAINT AND AFFIRMATIVE DEFENSES

NOW COMES the Defendant, **THOMAS DART, SHERIFF OF COOK COUNTY**, by and through his attorneys, **SANCHEZ DANIELS & HOFFMAN, LLP** and for his Answer and Affirmative Defenses to Plaintiff's Complaint, states as follows:

1. This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is conferred by 28 U.S.C. § 1343.

**ANSWER:** This Defendant admits that the allegations are brought under 42 U.S.C. §1983. Defendant further admits that jurisdiction is proper.

2. Devin Lynch, deceased, is a former detainee at the Cook County Department of Corrections (CCDOC). He sues by his mother and next best friend Charlene Bigelow for claims arising from his death.

**ANSWER:** This Defendant admits that Devin Lynch was a detainee of the Cook County Department of Corrections. This Defendant submits that the complaint speaks for itself as to in which capacity the plaintiff sues.

3. Defendant Thomas Dart is the Sheriff of Cook County. Plaintiff sues Dart in his official capacity only.

**ANSWER:** This Defendant admits that Thomas Dart is the Sheriff of Cook County. Defendants submit that the complaint speaks for itself as to in which capacity Thomas Dart, Sheriff of Cook County is sued.

4. Defendant Correctional Officer Darrell Maloy is employed as a correctional officer at the CCDOC. He is sued in his individual capacity.

**ANSWER:** This Defendant admits that he holds employment through Thomas Dart, Sheriff of Cook County as a correctional officer. This Defendant submits that the complaint speaks for itself as to in which capacity the plaintiff sues.

5. Defendant Cook County shares responsibility with defendant Sheriff for overseeing and supervising inmates identified as requiring mental health care and is joined in this action pursuant to Carver v. Sheriff of LaSalle County, 324 F.3d 947 (7th Cir. 2003).

**ANSWER:** This Defendant admits that there is a sharing of responsibility between this Defendant and Cook County. This Defendant does not make answer to the remaining allegations of this paragraph as they call for a legal conclusion.

## BACKGROUND

6. On July 11, 2008, the United States Department of Justice sent a letter to Sheriff Dart and Cook County following a lawful investigation into policies and practices at the CCDOC. This investigation, among many findings, concluded the Sheriff and County did not provide specialized training concerning suicide prevention to correctional officers working with individual with mental illness, and the CCDOC did not provide staff with quick access to cut-down tools for quick response in the event of a suicide attempt by hanging.

**ANSWER:** This Defendant submits that any letter dated July 11, 2008 from the United States Department of Justice speaks for itself.

7. In 2010, defendants Sheriff and Cook County entered into an Agreed Order in United States v. Cook County, 10 C 2946. The Agreed Order imposed a variety of obligations on defendant Sheriff and Cook County, including joint responsibility to monitor detainees

exhibiting psychological symptoms at the CCDOC.

**ANSWER:** This Defendant submits that any agreed order entered in United States v. Cook County, 10 C 2946 speaks for itself.

8. In early 2011, defendant Sheriff and Cook County entered into an Inter-Agency Agreement. The Inter-Agency Agreement requires the County to plan and review training for Sheriff's employees in the area of suicide prevention and recognition of acute manifestations of certain medical and mental health problems. The agreement also requires Cook County to collaborate with the Sheriff to train and monitor Sheriff's staff designated to supervise detainees with documented mental health conditions.

**ANSWER:** This Defendant admits to the existence of the Inter-Agency Agreement and that the Inter-Agency agreement speaks for itself.

9. The Sheriff and County both are responsible for the housing of inmates with mental health conditions.

**ANSWER:** This Defendant admits the allegations of paragraph 9.

10. Inmates with diagnosed mental health conditions are assigned to living units (or tiers) at the CCDOC. These living units are frequently referred to as a "psych tier" at the CCDOC.

**ANSWER:** This Defendant admits the allegations of paragraph 10.

11. The Sheriff and Cook County jointly opened a new division at the CCDOC in 2013 called the Residential Treatment Unit (RTU). The RTU was designed to house inmates with diagnosed physical and psychological ailments.

**ANSWER:** This Defendant admits the allegations of paragraph 11.

12. The RTU has been grossly understaffed.

**ANSWER:** This Defendant denies the allegations in Paragraph 12.

13. The chronic staff shortages caused the Sheriff's sworn members to be unable to provide basic security to detainees.

**ANSWER:** This Defendant denies the allegations in Paragraph 13.

14. Most importantly, the staff shortages significantly interferes with the Sheriff and County's ability to supervise and monitor detainees in the RTU assigned to a "psych tier" because the correctional officers lack the specialized training and knowledge to provide security for detainees with mental illness.

**ANSWER:** This Defendant denies the allegations in Paragraph 14.

15. Due to the staffing shortages, Cook County is unable to train an adequate number of the Sheriff's sworn staff responsible for supervising and monitoring inmates assigned to a "psych tier."

**ANSWER:** This Defendant makes no answer to paragraph 15 as it is not directed to this Defendant.

16. The Sheriff also does not have sufficient staff to adequately staff each "psych tier" causing significant gaps in security.

**ANSWER:** This Defendant denies the allegations in paragraph 16.

17. In March 2016, Tier 2B of the RTU was designated by the Sheriff and County as a "psych tier."

**ANSWER:** This Defendant admits the allegations of paragraph 17.

18. At all relevant times, the Sheriff and County required Tier 2B to be under "direct supervision."

**ANSWER:** This Defendant admits that Tier 2B is a "direct supervision" tier.

19. "Direct supervision" means direct and continuous supervision of inmates by a

sworn member on a 24-hour basis requiring the sworn member to be in direct and oral contact with the inmates.

**<u>ANSWER</u>:** This Defendant makes no answer as to paragraph 19 as it calls for a legal conclusion.

20. Every tier in the RTU must have a security check pursuant to the policy of the CCDOC at least every 30 minutes. It is common knowledge that some tiers in the RTU designed as a "psych tier" must have more frequent security checks due to the type of inmates housed in the living unit.

**<u>ANSWER</u>:** This Defendant admits that a security check should occur every 30 minutes. This Defendant neither admits nor denies what is "common knowledge" as such is outside the scope of knowledge of this Defendant.

21. A security check requires a tier officer to walk the entire tier, communicate with all inmates, inspect the bathroom, utility closet, and to make sure all doors and windows are secure.

**<u>ANSWER</u>:** The Sheriff of Cook County admits security checks include a tier officer walking through the entire tier, communicating with inmates, checking bathrooms, closets, doors, and windows.

22. To conduct a security check, it is necessary for two correctional officers to be present on a tier.

**<u>ANSWER</u>:** This Defendant admits that the procedure is for two correctional officers to be present.

23. Due to chronic staff shortages in the RTU, it is common practice that tier officers do not conduct 30 minute security checks.

**<u>ANSWER</u>:** This Defendant denies the allegations in paragraph 23.

24. The Sheriff is aware that tiers in the RTU are not provided adequate security and that this poses a major security risk because tier officers document "visual checks only" - or the

tier officer merely observed the living unit from the officer's desk - in the Officer's Living Unit Log.

**ANSWER:**   This Defendant denies the allegations in paragraph 24.

25. The failure to conduct a 30 minute security check causes inmates and staff to be at serious risk of harm.

**ANSWER:**   This Defendant denies the allegations in paragraph 25.

26. Also because of chronic staff shortages, the CCDOC has been unable to assign two correctional officers to various "psych tiers" and high security tiers in the RTU.

**ANSWER:**   This Defendant denies the allegations in paragraph 26.

27. The Sheriff's executive staff and Cook County's executive medical staff at the CCDOC have personal knowledge that inadequate staffing at the CCDOC, including the RTU, is dangerous and has contributed to serious personal injuries to inmates and staff.

**ANSWER:**   This Defendant denies the allegations of paragraph 27 as it relates to this Defendant. This Defendant makes no answer inasmuch as paragraph 27 is directed at Cook County.

28. At all times relevant in 2016, the Sheriff did not take any reasonable action to remedy the significant staff shortages at the CCDOC.

**ANSWER:**   This Defendant denies the allegations in paragraph 28.

29. Additionally, since the opening of the RTU until at least March 2016, it was known to leadership of the Sheriff and Cook County that the "psychological tiers" did not have sufficient staffing of officers with specialized training to monitor and supervise detainees diagnosed with mental health needs.

**ANSWER:**   This Defendant denies the allegations of paragraph 29.

30. Defendants Sheriff and Cook County knew the absence of specially trained

correctional officers to monitor and supervise detainees assigned to a "psych tier" exposed inmates to unnecessary risk of harm because the assigned staff lacked the ability to make ongoing assessments when an inmate's behavior indicated he may harm himself.

**ANSWER:** This Defendant denies the allegations in Paragraph 30.

### DEVIN LYNCH'S INCARCERATION AT CCDOC

31. Devin Lynch was a member of the Marine Corps reserves when he was processed into the CCDOC on February 6, 2016. As a Marine, he had served in Afghanistan.

**ANSWER:** This Defendant can neither admit nor deny the allegations of Paragraph 31 as it is outside the scope of knowledge of this Defendant. As such, this Defendant denies the same and demands strict proof thereof.

32. The intake process at the CCDOC includes a medical evaluation by defendant Cook County. During this process, defendant Cook County documented Mr. Lynch suffered from depression, anxiety, and posttraumatic stress disorder. Defendant Cook County also noted that Mr. Lynch had attempted suicide twice, the most recent attempt being February 5, 2016.

**ANSWER:** This Defendant admits that a medical evaluation is performed upon intake. Defendant admits that upon intake Plaintiff had an alert for Detox and P3 Mental Health Intermediate Housing. This Defendant makes no answer to the remaining allegations of paragraph 32 as it is directed to Cook County.

33. Because of Mr. Lynch's medical history, a Cook County medical provider ordered defendant Sheriff to assign Mr. Lynch to an "Intermediate Mental Health" living unit. This type of living unit is also known as a "psych tier."

**ANSWER:** This Defendant admits only that Plaintiff had a P3 Mental Health Intermediate Housing alert.

34. Defendants Sheriff and Cook County were aware that Mr. Lynch required specialized observation and monitoring because of his mental health history.

**ANSWER:** This Defendant admits that Plaintiff had a P3 Mental Health Intermediate

Housing alert.

35. Defendants Sheriff and Cook County jointly determined Mr. Lynch required placement in the RTU, Tier 2B, a "psych tier."

**ANSWER:** This Defendant admits that placement was proper in the RTU, Tier 2B based on collaboration with Cook County.

36. On March 22, 2016, defendant Maloy was assigned to the RTU, Tier 2B as the "tier officer" from 3:00 p.m. to 11:00 p.m.

**ANSWER:** This Defendant admits the allegations of paragraph 36.

37. On March 22, 2016, defendant Maloy was the only "tier officer" assigned to Tier 2B on the 3:00 p.m. to 11:00 p.m. shift.

**ANSWER:** This Defendant admits that Defendant Maloy was the only officer present on Tier 2B at the relevant times identified in this complaint.

38. On March 22, 2016, defendant Maloy was not trained by either the Sheriff or County to supervise inmates assigned to a "psych tier."

**ANSWER:** This Defendant denies the allegations in Paragraph 38.

39. On March 22, 2016, defendant Maloy did not have quick access to a cut-down tool on Tier 2B and had received no training as how to respond when an inmate is discovered hanging.

**ANSWER:** This Defendant denies the allegations in Paragraph 39.

40. On March 22, 2016, defendant Maloy was not provided a backup officer to conduct security checks.

**ANSWER:** This Defendant neither admits nor denies the allegations of paragraph 40 as investigation continues. Defendant does admit that during portions of the tour back up was provided.

41. During the afternoon of March 22, 2016, Mr. Lynch exhibits suicidal behavior:

      a.        Between 1630 and 1708 Mr. Lynch is on the dayroom telephone.

      b.        Shortly after 1708 Mr. Lynch enters the bathroom crying.

      c.        At 1730 Mr. Lynch checks the door of a utility closet and returns to the telephone.

      d.        At 1734 Mr. Lynch walks to the bathroom crying.

      e.        Between 1735 and 1809 Mr. Lynch obtains sheets from his bed and brings them into the bathroom.

**ANSWER:** This Defendant denies the allegations of paragraph 41, inclusive (a)-(e).

42.    At 19:21 hours defendant Maloy opens a utility closet in the bathroom of Tier 2B at the request of Mr. Lynch.

**ANSWER:** This Defendant admits the allegations of paragraph 42.

43.    It is common knowledge that a correctional officer may never leave unlocked the utility closet in a dorm. The utility closet has various items that may be used to harm inmates and it is common knowledge that on a "psych tier," such as 2B, an inmate may use the location to harm himself.

**ANSWER:** This Defendant can neither admit nor deny what is considered "common knowledge" as it is outside the scope of knowledge of this Defendant.

44.    During security checks, the tier officer must inspect the utility closet on Tier 2B.

**ANSWER:** This Defendant admits that an inspection of the utility closet should occur.

45.    After the utility closet is unlocked, Mr. Lynch continues to exhibit behavior that cries out for the attention of the assigned tier officer.

      a.        Mr. Lynch makes a final phone call at 2009 which ends at 2040.

      b.        At 2045 Mr. Lynch removes the contents of the utility closet.

      c.        At 2046 it is obvious bed sheets are around Mr. Lynch's neck and additional sheets are concealed under his uniform.

d. Between 2054 and 2055 Mr. Lynch is inside the utility closet and opens and shuts the door several times. At 2055 the utility closet is closed completely.

**ANSWER:** This Defendant denies the allegations of paragraph 45, including subparagraphs (a) thorugh (d).

46. Defendant Maloy does not identify Mr. Lynch until 21:47. At this time, Mr. Lynch is found hanging in the utility closet.

**ANSWER:** This Defendant admits that Plaintiff was discovered at approximately 21:47.

47. Defendant Maloy did not have access to a cut-down tool. The removal of the noose around Mr. Lynch's neck was delayed because defendant Maloy had to wait for other correctional officers to come into the tier with a knife to cut Mr. Lynch down. Prompt action by defendant Maloy when he discovered Mr. Lynch hanging in the utility closet may have saved his life.

**ANSWER:** This Defendant denies the allegations in Paragraph 47.

48. Mr. Lynch was pronounced dead at 22:07 by a physician employed by defendant Cook County.

**ANSWER:** This Defendant admits that at approximately 22:07 Plaintiff was pronounced dead.

### COUNT 1: FAILURE TO PROTECT DEFENDANT MALOY

49. As described above, due to the suicidal behavior of Mr. Lynch on March 22, 2016, there was a strong likelihood that he would seriously harm himself.

**ANSWER:** This Defendant denies the allegations of paragraph 49.

50. Defendant Maloy was aware of this strong likelihood that Mr. Lynch would seriously harm himself in the near future as a result of his behavior on March 22, 2016.

**ANSWER:** This Defendant denies the allegations in Paragraph 50.

51. Defendant Maloy consciously failed to take reasonable measures to prevent Mr. Lynch from committing suicide. Defendant Maloy also failed to take reasonable measures to immediately remove the noose when he discovered Mr. Lynch hanging in the utility closet.

**ANSWER:** This Defendant denies the allegations in Paragraph 51.

52. Mr. Lynch would have survived if defendant Maloy had not disregarded these risks.

**ANSWER:** This Defendant denies the allegations in Paragraph 52.

### COUNT 2: LIABILITY OF DEFENDANT SHERIFF AND COOK COUNTY

53. As described above, defendants Sheriff and Cook County have been aware of systemic gaps for protecting inmates exhibiting suicidal behavior since at least 2008.

**ANSWER:** This Defendant denies the allegations in Paragraph 53.

54. Due to severe staff shortages, defendants Sheriff and Cook County have been unable to provide correctional officers with specialized training to supervise and monitor inmates assigned to "psych tiers."

**ANSWER:** This Defendant denies the allegations in Paragraph 54.

55. Defendants Sheriff and Cook County know that inmates assigned to various "psych tiers" in the RTU are at unreasonable risk of harm because of severe staff shortages and deficient training.

**ANSWER:** This Defendant denies the allegations in Paragraph 55.

56. Defendants Sheriff and Cook County did not take any reasonable measure to remedy the grossly inadequate security in the RTU's "psych tiers."

**ANSWER:** This Defendant denies the allegations in Paragraph 56.

57. The above described policies and widespread equivalent practices were the

moving force behind the death of Mr. Lynch.

**ANSWER:** This Defendant denies the allegations in Paragraph 57.

58. Plaintiff requests trial by jury on his claim for damages.

**ANSWER:** Plaintiff's demand speaks for itself.

WHEREFORE, based on the foregoing, the Defendant, **THOMAS DART, SHERIFF OF COOK COUNTY**, denies that Plaintiff is entitled to any damages. Defendant prays that this Honorable Court grant judgment in their favor and against Plaintiff on all aspects of his complaint and further requests that this Honorable Court grant judgment of Defendant's fees, costs, and such other relief that this Court deems just and appropriate.

## AFFIRMATIVE DEFENSES

NOW COME the Defendant **THOMAS DART, SHERIFF OF COOK COUNTY**, by and through his attorney **SANCHEZ DANIELS & HOFFMAN, LLP**, and through one of their Special Assistant State's Attorneys Elaine C. Davenport of Sanchez Daniels & Hoffman LLP, and hereby assert the following Affirmative Defenses:

1. The Defendants' conduct was at all times objectively reasonable and did not violate any of Plaintiff's clearly established Constitutional rights. Accordingly, the Defendants are entitled to the defense of qualified immunity.

2. Defendant D. Maloy's conduct was at all times objectively reasonable and did not violate any of Plaintiff's clearly established Constitutional rights. Accordingly, the Defendants are entitled to the defense of qualified immunity.

3. To the extent it is revealed that Plaintiff failed to take reasonable measures to mitigate his alleged injuries and damages, those facts shall be presented to preclude recovery for Plaintiff.

## JURY DEMAND

With regard to any issue that may be appropriately heard by a jury in this cause of action, Defendant, Thomas Dart and Sheriff of Cook County, hereby demand a jury trial.

        Respectfully submitted,

        **SANCHEZ DANIELS & HOFFMAN LLP**

        By: s/Elaine C. Davenport
            One of the Attorneys for Defendants,
            **THOMAS DART, SHERIFF OF COOK COUNTY**

Elaine C. Davenport--6272827
**SANCHEZ DANIELS & HOFFMAN, LLP**
**333 West Wacker Drive**
**Suite 500**
**Chicago, Illinois 60606**
**(312) 641-1555 - Telephone**
**(312) 641-3004 - Facsimile**