## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| Charlene Bigelow, as mother and, | ) | |
| Next best friend of Devin Lynch, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18-cv-2055 |
| | ) | |
| Thomas Dart, Sheriff of Cook County, | ) | The Honorable Judge |
| Correctional Officer Darrell Maloy (Star 16247), | ) | John Robert Blakey |
| and Cook County, Illinois, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT COOK COUNTY'S
## ANSWER TO PLAINTIFF'S COMPLAINT

Defendant Cook County, by and through its attorney, KIMBERLY M. FOXX, State's Attorney of Cook County, through her assistant, Lyle K. Henretty, answers Complaint as follows:

1.     This is a civil action arising under 42 U.S.C. § 1983. The jurisdiction of this Court is conferred by 28 U.S.C. § 1343.

**ANSWER:     Defendant Cook County admits that Plaintiff purports that this action arises under 42 U.S.C. § 1983, but denies that she is entitled to any relief sought herein.  Defendant admits the remaining allegations set forth herein.**

2.     Devin Lynch, deceased, is a former detainee at the Cook County Department of Corrections (CCDOC). He sues by his mother and next best friend Charlene Bigelow for claims arising from his death.

**ANSWER:     Defendant admits the first sentence in this paragraph.  Defendant lacks knowledge with which to form a belief as to the truth of the remaining allegations in this paragraph.**

1

3.      Defendant Thomas Dart is the Sheriff of Cook County. Plaintiff sues Dart in his official capacity only.

**ANSWER:     Defendant admits that Thomas Dart is the Sheriff of Cook County and that Plaintiff purports to sue him in his official capacity only.**

4.      Defendant Correctional Officer Darrell Maloy is employed as a correctional officer at the CCDOC. He is sued in his individual capacity.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

5.      Defendant Cook County shares responsibility with defendant Sheriff for overseeing and supervising inmates identified as requiring mental health care and is joined in this action pursuant to *Carver v. Sheriff of LaSalle County,* 324 F.3d 947 (7th Cir. 2003).

**ANSWER:     Defendant denies the allegations set forth in this paragraph.**

## BACKGROUND

6.      On July 11, 2008, the United States Department of Justice sent a letter to Sheriff Dart and Cook County following a lawful investigation into policies and practices at the CCDOC. This investigation, among many findings, concluded the Sheriff and County did not provide specialized training concerning suicide prevention to correctional officers working with individual with mental illness, and the CCDOC did not provide staff with quick access to cut-down tools for quick response in the event of a suicide attempt by hanging.

**ANSWER:     The July 11, 2008 letter speaks for itself.**

7.      In 2010, defendants Sheriff and Cook County entered into an Agreed Order in *United States v. Cook County*, 10 C 2946. The Agreed Order imposed a variety of obligations on defendant Sheriff and Cook County, including joint responsibility to monitor detainees exhibiting psychological symptoms at the CCDOC.

**ANSWER:**    **The Agreed Order speaks for itself.**

8.      In early 2011, defendant Sheriff and Cook County entered into an Inter-Agency Agreement. The Inter-Agency Agreement requires the County to plan and review training for Sheriff's employees in the area of suicide prevention and recognition of acute manifestations of certain medical and mental health problems. The agreement also requires Cook County to collaborate with the Sheriff to train and monitor Sheriff's staff designated to supervise detainees with documented mental health conditions.

**ANSWER:**    **Defendant admits the first sentence of this paragraph.  Defendant denies the remaining allegations to the extent they differ from the terms of the Inter-Agency Agreement, which speaks for itself.**

9.      The Sheriff and County both are responsible for the housing of inmates with mental health conditions.

**ANSWER:**    **Defendant admits that Cermak medical staff provides inmates with medical classifications, but denies the remaining allegations set forth in this paragraph.**

10.     Inmates with diagnosed mental health conditions are assigned to living units (or tiers) at the CCDOC. These living units are frequently referred to as a "psych tier" at the CCDOC.

**ANSWER:**    **Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

11.     The Sheriff and Cook County jointly opened a new division at the CCDOC in 2013 called the Residential Treatment Unit (RTU). The RTU was designed to house inmates with diagnosed physical and psychological ailments.

**ANSWER:     Defendant admits the allegations set forth in this paragraph.**

12.     The RTU has been grossly understaffed.

**ANSWER:     Defendant denies the allegations set forth in this paragraph.**

13.     The chronic staff shortages caused the Sheriff's sworn members to be unable to provide basic security to detainees.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

14.     Most importantly, the staff shortages significantly interferes with the Sheriff and County's ability to supervise and monitor detainees in the RTU assigned to a "psych tier" because the correctional officers lack the specialized training and knowledge to provide security for detainees with mental illness.

**ANSWER:     Defendant denies the allegations set forth in this paragraph.**

15.     Due to the staffing shortages, Cook County is unable to train an adequate number of the Sheriff's sworn staff responsible for supervising and monitoring inmates assigned to a "psych tier."

**ANSWER:     Defendant denies the allegations set forth in this paragraph.**

16.     The Sheriff also does not have sufficient staff to adequately staff each "psych tier" causing significant gaps in security.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

17.     In March 2016, Tier 2B of the RTU was designated by the Sheriff and County as a "psych tier."

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

18.     At all relevant times, the Sheriff and County required Tier 2B to be under "direct supervision."

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

19.     "Direct supervision" means direct and continuous supervision of inmates by a sworn member on a 24-hour basis requiring the sworn member to be in direct and oral contact with the inmates.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

20.     Every tier in the RTU must have a security check pursuant to the policy of the CCDOC at least every 30 minutes. It is common knowledge that some tiers in the RTU designed as a "psych tier" must have more frequent security checks due to the type of inmates housed in the living unit.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

21.     A security check requires a tier officer to walk the entire tier, communicate with all inmates, inspect the bathroom, utility closet, and to make sure all doors and windows are secure.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

22.    To conduct a security check, it is necessary for two correctional officers to be present on a tier.

**ANSWER:    Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

23.    Due to chronic staff shortages in the RTU, it is common practice that tier officers do not conduct 30 minute security checks.

**ANSWER:    Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

24.    The Sheriff is aware that tiers in the RTU are not provided adequate security and that this poses a major security risk because tier officers document "visual checks only" - or the tier officer merely observed the living unit from the officer's desk - in the Officer's Living Unit Log.

**ANSWER:    Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

25.    The failure to conduct a 30 minute security check causes inmates and staff to be at serious risk of harm.

**ANSWER:    Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

26.    Also because of chronic staff shortages, the CCDOC has been unable to assign two correctional officers to various "psych tiers" and high security tiers in the RTU.

**ANSWER:    Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

27.     The Sheriff's executive staff and Cook County's executive medical staff at the CCDOC have personal knowledge that inadequate staffing at the CCDOC, including the RTU, is dangerous and has contributed to serious personal injuries to inmates and staff.

**ANSWER:     Defendant denies the allegations set forth in this paragraph.**

28.     At all times relevant in 2016, the Sheriff did not take any reasonable action to remedy the significant staff shortages at the CCDOC.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

29.     Additionally, since the opening of the RTU until at least March 2016, it was known to leadership of the Sheriff and Cook County that the "psychological tiers" did not have sufficient staffing of officers with specialized training to monitor and supervise detainees diagnosed with mental health needs.

**ANSWER:     Defendant denies the allegations set forth in this paragraph.**

30.     Defendants Sheriff and Cook County knew the absence of specially trained correctional officers to monitor and supervise detainees assigned to a "psych tier" exposed inmates to unnecessary risk of harm because the assigned staff lacked the ability to make on-going assessments when an inmate's behavior indicated he may harm himself.

**ANSWER:     Defendant denies the allegations set forth in this paragraph.**

**DEVIN LYNCH'S INCARCERATION AT CCDOC**

31.     Devin Lynch was a member of the Marine Corps reserves when he was processed into the CCDOC on February 6, 2016. As a Marine, he had served in Afghanistan.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

32.     The intake process at the CCDOC includes a medical evaluation by defendant Cook County. During this process, defendant Cook County documented Mr. Lynch suffered from depression, anxiety, and post-traumatic stress disorder. Defendant Cook County also noted that Mr. Lynch had attempted suicide twice, the most recent attempt being February 5, 2016.

**ANSWER:     Defendant admits the first sentence in this paragraph.  Defendant denies the second sentence of this paragraph as it does not accurately reflect Plaintiff's medical records.**

33.     Because of Mr. Lynch's medical history, a Cook County medical provider ordered defendant Sheriff to assign Mr. Lynch to an "Intermediate Mental Health" living unit. This type of living unit is also known as a "psych tier."

**ANSWER:     Defendant admits that a Cook County medical provider recommended that Mr. Lynch be placed in Intermediate Mental Health living unit.  Defendant denies the remaining allegations set forth in this paragraph.**

34.     Defendants Sheriff and Cook County were aware that Mr. Lynch required specialized observation and monitoring because of his mental health history.

**ANSWER:     Defendant admits that Cermak medical staff provided Mr. Lynch with a medical classification, but denies the remaining allegations set forth in this paragraph.**

35.     Defendants Sheriff and Cook County jointly determined Mr. Lynch required placement in the RTU, Tier 2B, a "psych tier."

**ANSWER:     Defendant admits that Cermak medical staff provided Mr. Lynch with a medical classification, but denies the remaining allegations set forth in this paragraph.**

36.     On March 22, 2016, defendant Maloy was assigned to the RTU, Tier 2B as the "tier officer" from 3:00 p.m. to 11:00 p.m.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

37.     On March 22, 2016, defendant Maloy was the only "tier officer" assigned to Tier 2B on the 3:00 p.m. to 11:00 p.m. shift.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

38.     On March 22, 2016, defendant Maloy was not trained by either the Sheriff or County to supervise inmates assigned to a "psych tier."

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

39.     On March 22, 2016, defendant Maloy did not have quick access to a cut-down tool on Tier 2B and had received no training as how to respond when an inmate is discovered hanging.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

40.     On March 22, 2016, defendant Maloy was not provided a backup officer to conduct security checks.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

41.     During the afternoon of March 22, 2016, Mr. Lynch exhibits suicidal behavior:

      a.     Between 1630 and 1708 Mr. Lynch is on the dayroom telephone.

      b.     Shortly after 1708 Mr. Lynch enters the bathroom crying.

      c.     At 1730 Mr. Lynch checks the door of a utility closet and returns to the telephone.

      d.     At 1734 Mr. Lynch walks to the bathroom crying.

      e.     Between 1735 and 1809 Mr. Lynch obtains sheets from his bed and brings them into the bathroom.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

42.     At 1921 hours defendant Maloy opens a utility closet in the bathroom of Tier 2B at the request of Mr. Lynch.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

43.     It is common knowledge that a correctional officer may never leave unlocked the utility closet in a dorm. The utility closet has various items that may be used to harm inmates and it is common knowledge that on a "psych tier," such as 2B, an inmate may use the location to harm himself.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

44.     During security checks, the tier officer must inspect the utility closet on Tier 2B.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

45.     After the utility closet is unlocked, Mr. Lynch continues to exhibit behavior that cries out for the attention of the assigned tier officer.

   a.     Mr. Lynch makes a final phone call at 2009 which ends at 2040.

   b.     At 2045 Mr. Lynch removes the contents of the utility closet.

   c.     At 2046 it is obvious bed sheets are around Mr. Lynch's neck and additional sheets are concealed under his uniform.

   d.     Between 2054 and 2055 Mr. Lynch is inside the utility closet and opens and shuts the door several times. At 2055 the utility closet is closed completely.

**ANSWER:     Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

46. Defendant Maloy does not identify Mr. Lynch until 2147. At this time, Mr. Lynch is found hanging in the utility closet.

**ANSWER:** **Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

47. Defendant Maloy did not have access to a cut-down tool. The removal of the noose around Mr. Lynch's neck was delayed because defendant Maloy had to wait for other correctional officers to come into the tier with a knife to cut Mr. Lynch down. Prompt action by defendant Maloy when he discovered Mr. Lynch hanging in the utility closet may have saved his life.

**ANSWER:** **Defendant lacks knowledge with which to form a belief as to the truth of the allegations set forth in this paragraph.**

48. Mr. Lynch was pronounced dead at 2207 by a physician employed by defendant Cook County.

**ANSWER:** **Defendant admits that Mr. Lynch was pronounced dead at 10:07 by medical personnel, but denies the remaining allegations in this paragraph.**

## COUNT 1: FAILURE TO PROTECT
## DEFENDANT MALOY

49. As described above, due to the suicidal behavior of Mr. Lynch on March 22, 2016, there was a strong likelihood that he would seriously harm himself.

**ANSWER:** **This Count is not pled against Cook County, and thus no answer is necessary or provided.**

50. Defendant Maloy was aware of this strong likelihood that Mr. Lynch would seriously harm himself in the near future as a result of his behavior on March 22, 2016.

**ANSWER:** **This Count is not pled against Cook County, and thus no answer is necessary or provided.**

51.     Defendant Maloy consciously failed to take reasonable measures to prevent Mr. Lynch from committing suicide. Defendant Maloy also failed to take reasonable measures to immediately remove the noose when he discovered Mr. Lynch hanging in the utility closet.

**ANSWER:     This Count is not pled against Cook County, and thus no answer is necessary or provided.**

52.     Mr. Lynch would have survived if defendant Maloy had not disregarded these risks.

**ANSWER:     This Count is not pled against Cook County, and thus no answer is necessary or provided.**

### COUNT 2: LIABILITY OF DEFENDANT SHERIFF AND COOK COUNTY

53.     As described above, defendants Sheriff and Cook County have been aware of systemic gaps for protecting inmates exhibiting suicidal behavior since at least 2008.

**ANSWER:     Defendant denies the allegations set forth in this paragraph.**

54.     Due to severe staff shortages, defendants Sheriff and Cook County have been unable to provide correctional officers with specialized training to supervise and monitor inmates assigned to "psych tiers."

**ANSWER:     Defendant denies the allegations set forth in this paragraph.**

55.     Defendants Sheriff and Cook County know that inmates assigned to various "psych tiers" in the RTU are at unreasonable risk of harm because of severe staff shortages and deficient training.

**ANSWER:     Defendant denies the allegations set forth in this paragraph.**

56.     Defendants Sheriff and Cook County did not take any reasonable measure to remedy the grossly inadequate security in the RTU's "psych tiers."

**ANSWER:     Defendant denies the allegations set forth in this paragraph.**

12

57.    The above described policies and widespread equivalent practices were the moving force behind the death of Mr. Lynch.

**ANSWER:    Defendant denies the allegations set forth in this paragraph.**

58.    Plaintiff requests trial by jury on his claim for damages.

**ANSWER:    Defendant also demands a trial by jury.**

WHEREFORE, defendant, COOK COUNTY, denies that plaintiff is entitled to judgment in any amount whatsoever, and requests judgment in its favor and against plaintiff, plus costs, and any additional relief this Court deems reasonable and just.

## Affirmative Defenses

## First Affirmative Defense – Failure to Mitigate

To the extent the discovery reveals that the Plaintiff was responsible in whole or in part for failing to take the proper measures to protect his health such as but not limited to, taking care of his medical devices, following instructions from medical providers or requesting medical assistance when needed, Defendant County asserts that precludes recovery.

## Second Affirmative Defense – Qualified Immunity for Individuals

All County employees acted appropriately and in conformance with the existing law.  To the extent a liability finding is made based upon new factual grounds which have never before given rise to liability, or to the extent there is a finding of violation not previously and clearly established by law, Plaintiff is precluded from recovering monetary damages from the County.

Dated: <u>May 18, 2018</u>

KIMBERLY M. FOXX
State's Attorney of Cook County

By:    <u>*/s/ Lyle K. Henretty*</u>
Lye K. Henretty
Assistant State's Attorney
69 West Washington, Suite 2030
Chicago, IL 60602
(312) 603-1426
lyle.henretty@cookcountyil.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Lyle K. Henretty, hereby certify that, in accordance with Fed. R. Civ. P. 5. and LR 5.5 and the General Order on Electronic Case Filing (ECF), the attached document was served pursuant to the District Court's ECF system to counsel of record on May 18, 2018.

<u>*/s/ Lyle K. Henretty*</u>
Lyle K. Henretty